M. Anderson Berry (SBN 262879)
Gregory Haroutunian (SBN 330263)
**EMERY REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Tel: (916) 923-6995
*anderson@emeryreddy.com*
*gregory@emeryreddy.com*

[Additional counsel on signature page]

*Attorneys for Plaintiffs and the Putative Class*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY MAZMANIAN and MICHAEL MCGUINNESS, individually and on behalf of all others similarly situated,<br><br>                         Plaintiffs,<br><br>v.<br><br>LCPTRACKER, INC.,<br><br>                         Defendant. | Case No. 8:24-cv-02701-JAK-DFM<br><br>**PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT**<br><br>Date:   January 12, 2025<br>Time:   8:30 A.M.<br>Ctrm:  10C<br>Judge:  John A. Kronstadt |

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on Monday, January 12, 2025, at 8:30 a.m., or as soon thereafter as the matter may be heard by the Hon. John A. Kronstadt, Courtroom 10C, 915 East 1st Street, Los Angeles, CA  90012, Plaintiffs Gary Mazmanian and Michael McGuinness respectfully move for preliminary approval of a proposed class action settlement reached with Defendant LCPTracker, Inc.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on December 5, 2025, and is unopposed.

This Settlement[1] resolves claims arising from a data incident that occurred between August 14-20, 2024, where an unauthorized actor gained access to files containing sensitive information of approximately 40,963 of Defendant's clients' and permitted users' employees, vendors, and other persons.

The Settlement provides substantial relief for the Settlement Class, including a non-reversionary, $495,000.00 Settlement Fund and injunctive relief in the form of business practice changes to increase the protection of the Private Information of the Settlement Class ("PI") maintained by Defendant. Subject to approval, the Settlement Fund will be used to pay: court-approved Service Awards of $3,000.00 to each Class Representative; Class Counsel's attorneys' fees of no more than one-third of the Settlement Fund; Class Counsel's costs; and the costs of Notice and Settlement Administration.

The Settlement is the product of informed, arms-length negotiations between experienced counsel and is fair, reasonable, and adequate. Plaintiffs respectfully request that the Court enter an order: (i) granting Preliminary Approval of the Settlement; (ii) certifying the Settlement Class for settlement purposes; (iii) appointing the Plaintiffs as Class Representatives and Plaintiffs'

---

[1] All capitalized terms herein shall have the same meanings as those defined in the Settlement Agreement, attached hereto as ***Exhibit A***.

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

counsel as Class Counsel; (iv) approving the form of the Notices and the Notice Program; (v) approving the Claim Form and the Claim Process; (vi) appointing Simpluris, Inc., as Settlement Administrator; (vii) establishing procedures and deadlines for Settlement Class members ("Class Members") to opt-out and object; and (viii) scheduling a Final Approval Hearing. In support, Plaintiffs submit the accompanying Memorandum of Law and the Joint Declaration of Counsel.

DATE: December 8, 2025                    Respectfully submitted,

                                          By: */s/ Gregory Haroutunian*
                                          M. Anderson Berry (SBN 262879)
                                          Gregory Haroutunian (SBN 330263)
                                          **EMERY REDDY, PC**
                                          600 Stewart Street, Suite 1100
                                          Seattle, WA 98101
                                          Tel: (916) 823-6955
                                          *anderson@emeryreddy.com*
                                          *gregory@emeryreddy.com*

                                          J. Gerard Stranch, IV (*pro hac vice*)
                                          Grayson Wells (*pro hac vice* forthcoming)
                                          **STRANCH, JENNINGS & GARVEY, PLLC**
                                          223 Rosa L. Parks Avenue, Suite 200
                                          Nashville, TN 37203
                                          Tel: (615) 254-8801
                                          *gstranch@stranchlaw.com*
                                          *gwells@stranchlaw.com*

                                          John J. Nelson (SBN 317598)
                                          **MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
                                          280 S. Beverly Drive
                                          Beverly Hills, CA 90212
                                          Tel: (858) 209-6941
                                          *jnelson@milberg.com*
                                          Kristen Lake Cardoso (SBN 338762)

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

**KOPELOWITZ OSTROW P.A.**
One W. Las Olas Boulevard, Suite 500
Fort Lauderdale, Florida 33301
Tel: (954) 990-2218
cardoso@kolawyers.com

*Attorneys for Plaintiffs and the Settlement Class*

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL

# **TABLE OF CONTENTS**

I.  INTRODUCTION…………………………………………….. 10

II.  PROCEDURAL HISTORY…………………………………... 11

III.  SETTLEMENT TERMS..…………………………………… 11

   A. The Settlement Class……………………………………… 12

   B. The Settlement Fund……………………………………… 12

   C. Class Member Benefits…………………………………… 13

      1. Cash Payment A – Documented Losses…………………… 13

      2. Cash Payment B – Flat Cash Payment…………………….. 13

      3. Credit Monitoring…………………………………….... 13

      4. *Pro Rata* Adjustments on Cash Payments………………… 13

      5. Injunctive Relief…………………………………………. 14

   D. Settlement Administration………………………………... 14

   E. Notice to Class Members………………………………… 14

   F. Opt-Outs and Objections………………………………… 15

   G. Release…………………………………………………… 16

   H. Attorneys' Fees, Costs, and Service Awards………………… 16

IV.  LEGAL STANDARD…………………………………….... 17

V.  ARGUMENT………………………………………………. 17

   A. Preliminary Certification of the Settlement Class is Warranted……. 18

   B. The Settlement Satisfies Rule 23(a)……………………….. 18

      1. Numerosity………………………………………………. 18

      2. Commonality……………………………………………. 19

      3. Typicality………………………………………………... 20

      4. Adequacy………………………………………………... 20

   C. The Settlement Satisfies Rule 23(b)(3)…………………… 20

      1. Predominance…………………………………………… 20

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

2. Superiority…………………………………………….. 21

D. The Settlement is Fair, Reasonable, and Adequate………………… 22

   1. Adequate Representation……………………………………. 22

   2. Arm's Length Negotiations…………………………………. 23

   3. Adequate Relief……………………………………………. 23

      i. Costs, Risks, and Delay……………………………….. 23

      ii. Effectiveness…………………………………………. 24

      iii. Attorneys' Fees………………………………………. 24

      iv. Service Awards………………………………………. 25

      v. Other Agreements…………………………………….. 25

   4. Equitable Treatment…………………………………………. 25

E. The Settlement Is Proper Under *Briseño* and Satisfies the *Bluetooth* Factors………………………………………... 26

F. The Settlement Satisfies the *Hanlon* Factors………………………... 26

   1. The Strength of Plaintiffs' Case…………………………. 27

   2. The Risks, Expense, Complexity, and Duration of Further Litigation……………………………………………………. 28

   3. The Risk of Maintaining Class Certification……………………. 29

   4. The Amount of the Settlement……………………………... 29

   5. Investigation and Discovery……………………………... 30

   6. The Experience and Views of Counsel……………………….. 30

   7. The Presence of a Government Participant……………………. 30

   8. The Reaction of Class Members……………………………. 31

G. The Court Should Approve the Notice Program…………………… 31

H. The Court Should Appoint Class Counsel………………………… 32

I. Proposed Schedule of Post-Settlement Events……………………... 32

VI. CONCLUSION……………………………………………. 33

# **TABLE OF AUTHORITIES**

<u>Cases</u>

*Acosta v. Trans Union, LLC*,
  243 F.R.D. 377 (C.D. Cal. 2007)....................................................................... 17

*Adoma v. Univ. of Phx., Inc.*,
  913 F.Supp.2d 964 (E.D. Cal. 2012) .................................................................. 23

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997) ..................................................................................... 18, 20

*Ballew v. Huuuge, Inc.*,
  No. CV 23-4324, 2025 U.S. Dist. LEXIS 12445 (C.D. Cal. Jan. 22, 2025)...... 18

*Briseño v. Henderson*,
  998 F.3d 1014 (9th Cir. 2021) ........................................................................... 26

*Gaston v. Fabfitfun, Inc.*,
  No. 2:20-cv-09534, 2021 U.S. Dist. LEXIS 250695 (C.D. Cal. Dec. 9, 2021). 29

*Gupta v. Aeries Software, Inc.*,
  No. SA CV 20-0995, 2023 U.S. Dist. LEXIS 36141
  (C.D. Cal. Mar. 3, 2023)............................................................................. passim

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .................................................................... passim

*Harbour v. Cal. Health & Wellness Plan*,
  No. 5:21-cv-03322, 2024 U.S. Dist. LEXIS 7783
  (N.D. Cal. Jan. 16, 2024)............................................................................ passim

*Hashemi v. Bosley, Inc.*,
  No. CV 21-946, 2022 U.S. Dist. LEXIS 210946
  (C.D. Cal. Nov. 21, 2022) .................................................................. 18, 26, 27

*In re 23Andme, Inc. Customer Data Sec. Breach Litig.*,
  No. 24-md-03098, 2024 U.S. Dist. LEXIS 219622
  (N.D. Cal. Dec. 4, 2024)............................................................................. passim

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL

*In re Cal. Pizza Kitchen*,
    2023 U.S. Dist. LEXIS 60272 .................................................................. 18

*In re Loandepot Data Breach Litig.*,
    No. 8:24-cv-00136, 2025 U.S. Dist. LEXIS 6335
    (C.D. Cal. Jan. 13, 2025) ................................................................. passim

*In re Omnivision Techs.*,
    559 F.Supp.2d 1036 (N.D. Cal. 2009)..................................................... 30

*In re Postmeds*,
    2024 U.S. Dist. LEXIS 215466 (N.D. Cal. Nov. 26, 2024)...................... passim

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    No. 16-MD-02752-LHK, 2020 U.S. Dist. LEXIS 129939
    (N.D. Cal. July 22, 2020) ..................................................................... 25

*Koenig v. Lime Crime, Inc.*,
    2018 U.S. Dist. LEXIS 245459 (C.D. Cal. Apr. 2, 2018)........................ 24

*La Fleur v. Med. Mgmt. Int'l*,
    No. EDCV 13-00398, 2014 U.S. Dist. LEXIS 90367
    (C.D. Cal. June 25, 2014) .................................................................... 17

*Linney v. Cellular Alaska Partnership*,
    151 F.3d 1234 (9th Cir. 1998)............................................................... 30

*McKinney-Drobnis v. Oreshack*,
    16 F.4th 594 (9th Cir. 2021) ................................................................. 21

*Medoff v. Minka Lighting, LLC*,
    2024 U.S. Dist. LEXIS 235592 (C.D. Cal. 2024).................................... 23

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ............................................................................ 30

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004)........................................................... 23

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL

*Peterson v. Vivendi Ticketing US LLC*,
    No. CV 23-7498, 2024 U.S. Dist. LEXIS 155397
    (C.D. Cal. June 20, 2024) ............................................... 17, 21, 28, 30

*Rannis v. Recchia*,
    380 F. App'x 646 (9th Cir. 2010) ...................................................... 87

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) .............................................................. 30

*Sevilla v. Aaron's, Inc.*,
    2020 U.S. Dist. LEXIS 86994, 2020 WL 10573205
    (C.D. Cal. May 15, 2020) .................................................................. 24

*Silber v. Mabon*,
    18 F.3d 1449 (9th Cir. 1994) .............................................................. 31

*Spann v. J.C. Penney Corp.*,
    211 F.Supp.3d 1244 (C.D. Cal. 2016) .......................................... 17, 24

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ........................................................ 17, 27

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ........................................................................... 19

*Wright v. Linkus Enters., Inc.*,
    259 F.R.D. 468 (E.D. Cal. 2009) ........................................................ 17

**Statutes**

California Consumer Privacy Act (Cal. Civ. Cod. § 1798.100 et seq. .................. 11
Fed. R. Civ. P. 23(a) .................................................................................. 17
Fed. R. Civ. P. 23(a)(1) .............................................................................. 18
Fed. R. Civ. P. 23(a)(2) .............................................................................. 19
Fed. R. Civ. P. 23(a)(3) .............................................................................. 20
Fed. R. Civ. P. 23(a)(4) .............................................................................. 20
Fed. R. Civ. P. 23(c)(2)(B) ......................................................................... 31
Fed. R. Civ. P. 23(e) .......................................................................... passim
Fed. R. Civ. P. 23(e)(1)(B) ......................................................................... 31

-9-

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL

Fed. R. Civ. P. 23(g)(1)(A) (i–iv .......................................................................... 32

Fed. R. Civ. P. 23(g)(1)(B) .................................................................................. 32

**Other Authorities**

*Manual for Complex Litigation.*, § 21.632 (4th ed. 2013) ..................................... 18

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

## I.    STATEMENT OF FACTS

Defendant provides payroll reporting software, construction site compliance management, and workforce reporting services. As part of its business, Defendant collected and continues to collect PI from thousands of its clients' and permitted users' employees, and vendors, as well as other persons. Plaintiffs allege Defendant failed to implement adequate data security measures which resulted in the theft of the highly sensitive PI of thousands of individuals.

Between August 14-20, 2024, an outside, unauthorized actor accessed Defendant's network. The unauthorized actor accessed the PI of approximately 40,963 individuals, including Plaintiffs and Class Members.

On or about November 22, 2024, Defendant began sending notice letters to certain individuals, advising them that their PI may have been impacted in the Data Incident.

## II.    PROCEDURAL HISTORY

On December 14, 2024, Plaintiff Mazmanian filed his initial Class Action Complaint for the unlawful exposure of his and all similarly situated individuals' PI, seeking damages and injunctive relief. *See* Class Counsel's Joint Declaration in Support of Plaintiffs' Motion for Preliminary Approval ("Joint Decl."), attached hereto as ***Exhibit B***, ¶6. On December 30, 2024, Plaintiff McGuinness filed his initial Class Action Complaint against Defendant seeking similar relief on behalf of a similar class of individuals. *Id.* ¶7. On January 27, 2025, Plaintiffs filed a Notice of Related Cases. *Id.* ¶8.

Plaintiffs filed the operative Complaint on April 9, 2025, asserting claims for negligence/negligence *per se*, breach of third-party beneficiary contract, breach of bailment, invasion of privacy/public disclosure of private facts, and violation of the California Consumer Privacy Act (Cal. Civ. Cod. § 1798.100 et seq.). *Id.* ¶9.

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL

In or around February, 2025, the Parties began discussing settlement. *Id.* The Parties scheduled a mediation with experienced mediator Hon. David E. Jones (ret.) for July 16, 2025. *Id.* ¶10. On July 16, 2025, the Parties participated in a full-day mediation with Judge Jones. *Id.* In advance of the mediation, Defendant provided information related to, *inter alia*, the nature and cause of the incident, the number and location of individuals impacted by the Data Incident, and the specific type of information potentially accessed. *Id.* ¶11. The Parties did not reach an agreement at mediation but continued to negotiate, and on or about July 22, 2025, after arms-length negotiations between experienced counsel and a full day of mediation, the Parties reached an agreement in principle to resolve all claims on a classwide basis. *Id.* ¶12.

The Agreement was executed on December 8, 2025. *Id*. ¶13. The Parties did not discuss attorneys' fees and costs or potential Service Awards until after they reached agreement on all material Settlement terms. *Id.*

## III. SETTLEMENT TERMS

### A. The Settlement Class

The proposed Settlement Class is defined as:

> All United States residents to whom Defendant sent an individual notification that they were affected by the Data Incident.

Settlement Agreement, ¶ 59. Excluded from the Settlement Class are: (1) all persons who are directors, officers, and agents of Defendant, or their respective subsidiaries and affiliated companies; (2) governmental entities; and (3) the Judge assigned to the Action, that Judge's immediate family, and Court staff. *Id.*

### B. Settlement Fund

The Settlement provides for a non-reversionary cash Settlement Fund of $495,000.00, used to pay (1) all Class Member Benefits to Class Members who

-12-
PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL

submit Valid Claims; (2) all Settlement Administration Costs; and (3) any attorneys' fees, costs, and Service Awards awarded by the Court. *Id.* ¶¶62, 66.

## C.   Class Member Benefits

When submitting a Valid Claim, Class Members may elect to claim Cash Payment A and/or B. Additionally, Class Members may elect to receive Credit Monitoring. *Id.* ¶69.

### 1.   Cash Payment A –Documented Losses

Class Members may submit a claim for up to $2,500.00 in reimbursement for reasonable documented losses related to the Data Incident, subject to *pro rata* adjustments. To receive a documented loss payment, a Class Member must elect Cash Payment A on the Claim Form attesting under penalty of perjury to incurring documenting losses. Class Members will be required to submit reasonable documentation supporting the losses. Class Members shall not be reimbursed for expenses if they have been reimbursed for the same expenses by another source. *Id.* ¶69(a).

### 2.   Cash Payment B – Flat Cash Payment

A Class Member, regardless of whether they submitted a claim for Cash Payment A, may elect to receive Cash Payment B, estimated to be $50.00, subject to *pro rata* adjustments. *Id.* ¶69(b).

### 3.   Credit Monitoring

Class Members may also make a claim for two years of credit monitoring by one bureau, together with identity theft protection and $1,000,000 worth of insurance against identity theft. *Id.* ¶69(c).

### 4.   *Pro Rata* Adjustments on Cash Payments

Cash Payments to Class Members will be subject to a *pro rata* increase or decrease so as to fully exhaust the Net Settlement Fund. Any *pro rata* increases or decreases will be on an equal percentage basis. *Id.* ¶69.

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

### 5.    Injunctive Relief

Prior to Final Approval, Plaintiffs will receive from Defendant a written attestation regarding the security measures, including their cost, Defendant has implemented (or will implement) to better protect the Settlement Class' PI from future disclosure. The costs of these security measures were paid or will be paid separately by the Defendant and not from the Settlement Fund. *Id.* ¶69(d).

### D.    Settlement Administration

The Parties agree that, subject to Court approval, Simpluris, Inc. ("Simpluris") shall be the Settlement Administrator. Simpluris shall fulfill the requirements in the Preliminary Approval Order and the Agreement and comply with all applicable laws, including, *inter alia*, the Due Process Clause. *Id.* ¶71.

### E.    Notice to Class Members

The proposed Notice forms are attached to the Agreement as Exhibits 1 and 2. The Claim Form is attached as Exhibit 3. *Id.* ¶¶19, 37, 49.

Within five days of Preliminary Approval, Defendant will provide the Class List, including names, email addresses (if available), and postal addresses of Class members, to Simpluris. *Id.* ¶¶24, 74. Within 30 days following entry of the Preliminary Approval Order, Simpluris shall commence the Notice Program. *Id.* ¶75.

Simpluris will send Postcard Notice via U.S. Mail. *Id.* ¶49. Simpluris shall perform reasonable address traces for Postcard Notices that are returned as undeliverable. *Id.* ¶81. The Notice Program shall be completed no later than 45 days before the original date set for the Final Approval Hearing. *Id.* ¶82.

The Long Form Notice will be available on the Settlement Website, along with other relevant documents. *Id.* ¶¶37, 63. The Settlement Website will also provide an electronic option for submitting Claim Forms. *Id.* ¶77. Simpluris will

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

maintain an automated toll-free telephone line for Class Members to obtain more information about the Settlement. *Id*. ¶73(e).

**F.    Opt-Outs and Objections**

The procedures for opting out and objecting are detailed in plain language in the Long Form Notice, the Settlement Agreement, and on the Settlement Website. *Id.* ¶¶63, 78-80.

Class Members may opt-out at any time during the Opt-Out Period by submitting the request via the Settlement Website or by mail to Simpluris postmarked during the Opt-Out Period. The opt-out request must be personally signed by the Class Member, identify the requestor, and include a statement requesting to opt-out. *Id.* ¶78.

a.    Objections must be submitted via the Settlement Website or sent by mail to Simpluris. The objection must be submitted no later than the Objection Deadline and the Class Member must not have opted out of the Settlement Class. *Id.* ¶79. The objection must also set forth: (a) the objector's full name, mailing address, telephone number, and email address (if any); (b) all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel; (c) the number of times the objector has objected to a class action settlement within the 5 years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case; (d) the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or Application for Attorneys' Fees and Costs; (e) the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the five years preceding the date of the filed objection,

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

the caption of each case in which counsel or the firm has made such objection and a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding five years; (f) the identity of all counsel (if any) representing the objector, and whether they will appear at the Final Approval Hearing; (g) a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any); (h) a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and (i) the objector's signature (an attorney's signature is not sufficient). *Id.* ¶80. Class Counsel and/or Defendant's Counsel may conduct limited discovery on any objector or objector's counsel. *Id.*

### G. Release

In exchange for the Class Member Benefits, all Class Members will release all Released Claims against Defendant. *Id.* §XIII.

### H. Attorneys' Fees, Costs, and Service Awards

Class Counsel shall apply to the Court for an award of attorneys' fees of up to one-third of the Settlement Fund, plus reimbursement of costs, and Service Awards for the Class Representatives not to exceed $3,000.00 each. *Id.* ¶¶99-100. Class Counsel's Application for Attorneys' Fees, Costs, and Service Awards shall be filed as part of their Motion for Final Approval, not later than 45 days before the original date set for the Final Approval Hearing. *Id.* ¶97.

The Settlement is not contingent on approval of the request for attorneys' fees and costs or Service Awards. The provisions for attorneys' fees and costs and the Service Awards were not negotiated until after all material terms of the Settlement. *Id.* ¶101.

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

## IV.    LEGAL STANDARD

Approval of a class action settlement requires certification of a settlement class—which is appropriate when the settlement class satisfies Federal Rule of Civil Procedure 23(a) and one of the Rule 23(b) prongs. *La Fleur v. Med. Mgmt. Int'l*, No. EDCV 13-00398, 2014 U.S. Dist. LEXIS 90367, at *7 (C.D. Cal. June 25, 2014). Rule 23(e) "requires the Court to approve any settlement of class claims and requires reasonable direct notice to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (quoting Fed. R. Civ. P. 23(e)) (cleaned up). The court must evaluate "whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Id*. (quoting *Staton v. Boeing Co*., 327 F.3d 938, 952 (9th Cir. 2003)).

## V.    ARGUMENT

"Approval of a class action settlement requires a two-step process—a preliminary approval followed by a later final approval." *Peterson v. Vivendi Ticketing US LLC*, No. CV 23-7498, 2024 U.S. Dist. LEXIS 155397, at *9 (C.D. Cal. June 20, 2024) (internal quotations omitted). At preliminary approval, the court need only "evaluate the terms of the settlement to determine whether they are within a range of possible judicial approval." *Id*. (quoting *Wright v. Linkus Enters., Inc*., 259 F.R.D. 468, 472 (E.D. Cal. 2009)).

The proposed Settlement satisfies the standard for preliminary approval. This Settlement was the product of adversarial, arms-length, and non-collusive negotiations. *See* Joint Decl. ¶¶11-13. "[A] presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery." *Peterson*, 2024 U.S. Dist. LEXIS 155397, at *10 (quoting *Spann*, 314 F.R.D. at 324 (C.D. Cal. 2016)).

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

Moreover, as explained below, the Settlement satisfies Rules 23(a), 23(b)(3), 23(e), the *Bluetooth* factors, and the eight *Hanlon* factors.

### A.  Preliminary Certification of the Settlement Class is Warranted.

Before granting preliminary approval, the Court should first determine if certification is appropriate. *See Manual for Complex Litigation.*, § 21.632 (4th ed. 2013). Certification is appropriate if the proposed class, representatives, and counsel satisfy the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. *Amchem Prods. v. Windsor*, 521 U.S. 591, 613 (1997). Under 23(b)(3), the class action must satisfy the two requirements of predominance and superiority. *Id*. at 615–16. When considering settlement-only class certification, the court need not consider trial manageability. *Id*. at 620.

Courts routinely certify data breach class actions for settlement. *See, e.g., In re Loandepot Data Breach Litig*., No. 8:24-cv-00136, 2025 U.S. Dist. LEXIS 6335, at *17 (C.D. Cal. Jan. 13, 2025); *In re 23Andme, Inc. Customer Data Sec. Breach Litig*., No. 24-md-03098, 2024 U.S. Dist. LEXIS 219622, at *14 (N.D. Cal. Dec. 4, 2024); *Harbour v. Cal. Health & Wellness Plan*, No. 5:21-cv-03322, 2024 U.S. Dist. LEXIS 7783, at *2 (N.D. Cal. Jan. 16, 2024); *In re Cal. Pizza Kitchen*, 2023 U.S. Dist. LEXIS 60272, at *8; *Hashemi v. Bosley, Inc*., No. CV 21-946, 2022 U.S. Dist. LEXIS 210946, at *2 (C.D. Cal. Nov. 21, 2022).

### B.  The Settlement Satisfies Rule 23(a).

#### 1.  Numerosity

Numerosity requires that the class must be so numerous that joinder of all members is impracticable. FRCP 23(a)(1). "In general, courts find the numerosity requirement satisfied when a class includes at least 40 members." *Ballew v. Huuuge, Inc*., No. CV 23-4324, 2025 U.S. Dist. LEXIS 12445, at *19 (C.D. Cal. Jan. 22, 2025) (quoting *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010)). The

putative class includes approximately 40,963 individuals. Joint Decl. ¶28. Thus, numerosity is satisfied.

### 2. Commonality

Commonality requires questions of law or fact common to the class. FRCP 23(a)(2). This requires that class members "suffered the same injury" such "that all their claims can productively be litigated at once." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The determination of common questions must "resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. Even a single common question is sufficient. *Id*. at 359.

Commonality is satisfied because Plaintiffs and Class Members share common questions of law and fact arising from the same common event (i.e., the Data Incident). Agreement, ¶29. Additionally, Plaintiffs alleged numerous common questions of law and fact—including "[w]hether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the PII compromised in the Data Breach" and "[w]hether Defendant owed duties to Class Members to safeguard their PII" and "[w]hat damages Plaintiffs and Class Members suffered as a result of Defendant's misconduct[.]" Compl. ¶90.

Such allegations are sufficient to satisfy commonality. *See, e.g., In re 23Andme, Inc. Customer Data Sec. Breach Litig.*, 2024 U.S. Dist. LEXIS 219622, at *47 (finding that "[c]ommon questions exist because the [class members] were subject to the same data breach; plus, there are common questions related to the breach such as whether [defendant] could have had better security policies to protect [class member] information"); *see also In re Loandepot*, 2025 U.S. Dist. LEXIS 6335, at *7; *In re Postmeds*, 2024 U.S. Dist. LEXIS 215466, at *11–12 (N.D. Cal. Nov. 26, 2024).

///

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

### 3. Typicality

Typicality requires the claims or defenses of the class representative to be typical of the class. FRCP 23(a)(3). Typicality is satisfied because the claims and defenses of Plaintiffs mirror the claims and defenses of the Settlement Class. Agreement, ¶29. Such similarities are sufficient to satisfy typicality. *See, e.g., In re Loandepot*, 2025 U.S. Dist. LEXIS 6335, at *7 (finding typicality satisfied in a data breach class action); *In re 23Andme*, 2024 U.S. Dist. LEXIS 219622, at *47 ("Plaintiffs' claims are typical of the class claims because they were subject to the same data breach[.]").

### 4. Adequacy

Adequacy requires the class representative to fairly and adequately protect the class's interests. FRCP 23(a)(4). This requirement "serves to uncover conflicts of interest between named Parties and the class they seek to represent." *Amchem*, 521 U.S. at 625. Here, adequacy is satisfied because the interests of Plaintiffs and the Settlement Class align (i.e., to secure relief from the harms arising from the Data Incident). *See* Joint Decl. ¶19. There are no conflicts of interests between the Plaintiffs and the Settlement Class. *Id.* ¶31. Moreover, Plaintiffs retained qualified counsel with substantial experience in complex litigation and data breach class actions. *Id*. ¶34. Thus, the Settlement satisfies adequacy. *See, e.g., In re Loandepot*, 2025 U.S. Dist. LEXIS 6335, at *7 (finding adequacy satisfied in a data breach class action); *In re 23Andme*, 2024 U.S. Dist. LEXIS 219622, at *47 (finding adequacy satisfied because "there are no apparent conflicts"); *In re Postmeds*, 2024 U.S. Dist. LEXIS 215466, at *13–14 (same).

### C. The Settlement Satisfies Rule 23(b)(3).

### 1. Predominance

Predominance requires questions of law or fact common to class members to predominate over any questions affecting only individual members. FRCP 23(b)(3).

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

Predominance "does not require" a plaintiff seeking class certification to "show that
the elements of [their] claim are susceptible to classwide proof." *Amgen Inc.*, 568
U.S. at 468–69. Rather, predominance merely requires "that common questions
*predominate* over any questions affecting only individual [class] members." *Id.*
(quoting Fed. R. Civ. P. 23(b)(3)) (cleaned up); *see also In re 23Andme*, 2024 U.S.
Dist. LEXIS 219622, at *48–49 ("Admittedly, there may be some variation in class
members' individual injuries, specifically, regarding damages; but even assuming
such, that in and of itself does not negate predominance given the centrality of the
common questions identified above to the resolution of the case.").

     Here, predominance is satisfied because Plaintiffs and Class members share
common questions of law and fact arising from the same common event (i.e., the
Data Incident that occurred in August 2024). Agreement, ¶29. Plaintiffs alleged
numerous questions of law and fact that are common to the entire Settlement Class
and susceptible to common evidence. Moreover, any individualized questions are
minor compared to the voluminous common questions. Such commonalities are
sufficient to satisfy predominance. *See, e.g., In re Loandepot*, 2025 U.S. Dist.
LEXIS 6335, at *7 (finding commonality satisfied in a data breach class action); *In
re 23Andme*, 2024 U.S. Dist. LEXIS 219622, at *48; *In re Postmeds*, 2024 U.S.
Dist. LEXIS 215466, at *14–15; *Peterson*, 2024 U.S. Dist. LEXIS 155397, at *21.

## 2. Superiority

     Superiority requires that the class action must be superior to other available
methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P.
23(b)(3). Superiority is readily satisfied in data breach cases. *See, e.g., In re
Loandepot*, 2025 U.S. Dist. LEXIS 6335, at *7 (finding superiority satisfied in a
data breach class action); *In re 23Andme*, 2024 U.S. Dist. LEXIS 219622, at *50
(same). For example, in the data breach case *In re Postmeds*, the court held that
superiority was satisfied because the "judicial economy achieved through common

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL

adjudication makes class action a superior method for adjudicating the proposed class's claims." 2024 U.S. Dist. LEXIS 215466, at *16. Here, superiority is also satisfied because class-wide adjudication improves judicial economy.

### D.    The Settlement is Fair, Reasonable, and Adequate.

Under Fed. R. Civ. P. 23(e), the court may approve a class action settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate." *In re 23Andme*, 2024 U.S. Dist. LEXIS 219622, at *50 (quoting Fed. R. Civ. P. 23(e)). In recent years, "Congress amended Rule 23(e)(2) to provide specific factors for a district court to consider in determining whether a settlement is 'fair, reasonable, and adequate.'" *Id*. (quoting *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 607 (9th Cir. 2021)). The factors are whether "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." *Id*. (quoting Fed. R. Civ. P. 23(e)(2)).

### 1.    Adequate Representation

As detailed above, Class Counsel provided adequate representation—as evidenced by the Settlement, which provides timely and tailored relief to Plaintiffs and Class Members. *See* Joint Decl. ¶29. Moreover, Class Counsel has substantial experience in complex litigation and data breach class actions. *Id*. ¶¶34-35. Thus, this factor weighs toward preliminary approval. *See, e.g., In re Loandepot*, 2025 U.S. Dist. LEXIS 6335, at *7 (finding adequacy satisfied); *In re 23Andme*, 2024 U.S. Dist. LEXIS 219622, at *47 (same); *see also Gupta v. Aeries Software, Inc*.,

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

No. SA CV 20-0995, 2023 U.S. Dist. LEXIS 36141, at *12 (C.D. Cal. Mar. 3, 2023) (finding this factor weighed toward approval when counsel "had a sound basis for measuring the terms of the settlement").

## 2. Arm's Length Negotiations

The Settlement was the product of arm's length negotiations. *See* Joint Decl. ¶¶11-13. Additionally, the Settlement was secured only after the Parties exchanged formal and informal discovery—which enabled the Parties to better evaluate their respective claims and defenses. *See id.* ¶11. Such facts are significant because settlements are presumed fair if they "follow sufficient discovery and genuine arms-length negotiation." *Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)); *see also Gupta*, 2023 U.S. Dist. LEXIS 36141, at *11 (holding that this factor weighed toward approval when the "settlement was reached as a result of intensive, arm's-length negotiations"). Thus, this factor supports approval.

## 3. Adequate Relief

### i. Costs, Risks, and Delay

The Settlement provides adequate relief—especially in light of the costs, risks, and delays posed by protracted litigation. Joint Decl. ¶¶35-36. For example, in the data breach case *Gupta*, the court held that this factor supported approval because "even putting aside defendant's defenses, and assuming class certification were granted and upheld on appeal, defeating summary judgment, winning the case at trial, and then sustaining the final judgment on appeal would be extremely difficult." 2023 U.S. Dist. LEXIS 36141, at *13. Therein, the court reasoned that "it is significant that class members will receive a monetary recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Id.* (quoting *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 526

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL

(C.D. Cal. 2004)) (cleaned up). Here, this factor supports approval because the Settlement guarantees relief—as opposed to the mere possibility of relief in the future. Joint Decl. ¶29.

### ii.    Effectiveness

The Settlement is effective because the relief provided is tailored to the specific injuries of Class Members (i.e., the Settlement will allocate funds according to the out-of-pocket losses suffered by Class Members). Agreement, ¶69; Joint Decl. ¶31. Additionally, Defendant has agreed to implement data security improvements—which will be paid by Defendant separate and apart from all other Class Member. Agreement, ¶69; Joint Decl. ¶15. Thus, this factor weighs toward approval. *Gupta*, 2023 U.S. Dist. LEXIS 36141, at *14 (C.D. Cal.) (holding that "this factor weighs in favor of approval" when "class members were required to submit claim forms to obtain monetary relief").

### iii.    Attorneys' Fees

"California has recognized that most fee awards based on either a lodestar or percentage calculation are 33 percent and has endorsed the federal benchmark of 25 percent." *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1262 (C.D. Cal. 2016) (citations omitted). It is "not uncommon for courts to award one-third of the gross settlement fund as attorneys' fees where the circumstances warrant it." *Sevilla v. Aaron's, Inc.*, 2020 U.S. Dist. LEXIS 86994, 2020 WL 10573205, at *2 (C.D. Cal. May 15, 2020).

The Settlement is adequate insofar as Plaintiffs seek up to one-third of the Settlement Fund as attorney fees, plus costs. Settlement ¶100. This supports approval because courts in this District have consistently approved attorneys' fees above the 25% benchmark in similar data breach cases. *See, e.g., Medoff v. Minka Lighting, LLC*, 2024 U.S. Dist. LEXIS 235592, at *2 (C.D. Cal. 2024) (approving award of one-third of the settlement fund in data breach case); *see also Koenig v.*

-24-
PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL

*Lime Crime, Inc.*, 2018 U.S. Dist. LEXIS 245459, at *11 (C.D. Cal. Apr. 2, 2018) (approving award of 38% of the common fund in data breach case).

### iv. Service Awards

The Service Awards in the amount of $3,000.00 for each Class Representative are reasonable and consistent with awards in similar cases. *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 U.S. Dist. LEXIS 129939, at *33 (N.D. Cal. July 22, 2020), aff'd, No. 20-16633, 2022 U.S. App. LEXIS 17680 (9th Cir. June 27, 2022) (approving $2,500 to $7,500 awards in data breach cases). The Class Representatives have actively participated in this litigation from its inception, providing valuable information to Class Counsel, reviewing and approving pleadings, and dedicating themselves to pursuing litigation on behalf of the Settlement Class. Joint Decl. ¶¶19-21.

### v. Other Agreements

Here, this factor is inapplicable because there are no "agreements required to be identified under Rule 23(e)(3)." *See, e.g., Gupta*, 2023 U.S. Dist. LEXIS 36141, at *16 (C.D. Cal.); *Carter*, 2023 U.S. Dist. LEXIS 210744, at *27 (C.D. Cal.); Joint Decl. ¶37.

### 4. Equitable Treatment

The Settlement provides equitable treatment as Class Members may claim relief according to the specific harms suffered. Agreement, ¶69(a); Joint Decl. ¶31. Thus, this factor also weighs toward approval. *See, e.g., In re 23Andme*, 2024 U.S. Dist. LEXIS 219622, at *68 (finding that a settlement provided equitable treatment when monetary relief was allocated according to the injuries suffered); *Carter*, 2023 U.S. Dist. LEXIS 210744, at *34 (holding that "the Settlement treats class members equitably" when "[c]lass members may receive differing payouts under the Settlement depending on what documentation they have of their ordinary and

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

extraordinary costs"). In sum, the Settlement is fair, reasonable, and adequate under Fed. R. Civ. P. 23(e).

### E.    The Settlement Is Proper Under *Briseño* and Satisfies the *Bluetooth* Factors.

In the Ninth Circuit, class action settlements are often reviewed for the "three red flags" delineated by *Briseño v. Henderson*, 998 F.3d 1014, 1026 (9th Cir. 2021). These "three red flags" are also called the "*Bluetooth*" factors. *Id*. The three factors are: "(i) if class counsel receives a disproportionate distribution of the gross settlement amount; (ii) if any of the gross settlement amount reverts to the defendant; and (iii) if there is a 'clear sailing arrangement.'" *Hashemi*, 2022 U.S. Dist. LEXIS 210946, at *17. None of the red flags are present here. First, Class Counsel will request up to one-third of the Settlement Fund, which is within the range accepted by courts. Joint Decl., ¶25. Second, the Settlement Fund is *non-reversionary* such that no amount of the Settlement will revert to Defendant. Agreement, ¶62. Third, the Settlement Agreement does not contain a clear sailing provision. *See id.*, generally.

Thus, the Settlement is proper under *Briseño*, and the Court should grant preliminary approval. *See, e.g., Hashemi*, 2022 U.S. Dist. LEXIS 210946, at *22 ("After considering each of the *Briseño* factors, the Court finds that the Settlement Agreement, on balance, was not collusive or based on inappropriate self-interest."); *Gupta*, 2023 U.S. Dist. LEXIS 36141, at *15–16 (holding that "although the Settlement Agreement includes an implicit clear sailing provision . . . any fees not awarded will not revert to defendant; instead, fees will be added to the net settlement fund, from which payments to class members will be made . . . [t]hus, there is no issue").

### F.    The Settlement Satisfies the *Hanlon* Factors.

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

At preliminary approval, courts in the Ninth Circuit consider the eight factors provided by *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).[2] Specifically, "[i]n determining whether a settlement is fair, reasonable, and adequate, courts must balance a number of factors: [1] the strength of the plaintiffs' case; [2] the risk, expense, complexity and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of proceedings; [6] the experience and views of counsel; [7] the presence of a government participant; and [8] the reaction of the class members to the proposed settlement." *Hashemi*, 2022 U.S. Dist. LEXIS 210946, at *6 (quoting *Hanlon*, 150 F.3d at 1026). As detailed below, the *Hanlon* factors support preliminary approval because two factors are inapplicable and the other six weigh toward preliminary approval.

## 1.  The Strength of Plaintiffs' Case.

In the data breach context, evaluating the strength of a case is difficult because "there have been no data breach cases tried to verdict, and only a handful of cases have achieved class certification." *In re Postmeds*, 2024 U.S. Dist. LEXIS 215466, at *23. Indeed, in *In re Postmeds*, the court approved a $7.5 million common fund settlement—even when the estimated full recovery was approximately $50 million. *Id.* at *24. Similarly, in *In re 23Andme*, the court approved a $30 million common fund settlement when the potential recovery was "almost $50 billion in damages . . . if the class were to completely prevail at trial[.]" 2024 U.S. Dist. LEXIS 219622, at *54.

---

[2] The *Hanlon* factors are occasionally called the "*Staton* factors" or the "*Churchill* factors." *See Briseño*, 998 F.3d at 1023 (discussing the "*Hanlon/Staton* factors"); *Harbour*, 2024 U.S. Dist. LEXIS 7783, at *12 (discussing the "*Churchill* factors").

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

Here, the strength of Plaintiffs' case is uncertain. Joint Decl. ¶29; *Peterson*, 2024 U.S. Dist. LEXIS 155397, at *14 (C.D. Cal.) (noting that "if litigation were to proceed, there is a fair possibility that Plaintiffs and/or the Settlement Class do not prevail"). After all, [w]ithout a compromise, there [is] little guarantee of any benefit to the Settlement Class without a substantial amount of further litigation." *Harbour*, 2024 U.S. Dist. LEXIS 7783, at *13. As such, "[t]his factor weighs strongly in favor of the settlement." *Id*.

### 2. The Risks, Expense, Complexity, and Duration of Further Litigation.

In data breach cases, protracted litigation poses substantial risks—especially in terms of establishing liability and damages. *In re 23Andme*, 2024 U.S. Dist. LEXIS 219622, at *55 (explaining that "on liability for the negligence-based claims, [defendant] could argue contributory negligence if a [class member] recycled login credentials or failed to use a unique password" and that "if the class asserts that [class members] suffered losses as a result of the data breach, quantifying those losses—which could be both economic and noneconomic—could be difficult" and that "variation in individual injuries suffered and potential damages claimable, while not necessarily preclusive of certification under Rule 23(b)(3) as noted above, poses challenges"); *see also Harbour*, 2024 U.S. Dist. LEXIS 7783, at *13 (noting that "this factor favors the settlement" because the "data breach injury asserted is legally unproven, technically complex, and potentially of little value").

Class litigation poses substantial risks of "denial or reversal of class certification . . . losing on summary judgment or at a jury trial . . . [or] revers[al] on appeal" which would "effectively extinguish any hope of recovery by the Settlement Class." *In re Postmeds*, 2024 U.S. Dist. LEXIS 215466, at *24; *see also Carter*, 2023 U.S. Dist. LEXIS 210744, at *16 ("Even if Plaintiffs could secure a

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

better result than the Settlement represents at trial, any result obtained then would take significantly longer and there is a risk that Plaintiffs could have received much less, or nothing at all."). These risks are likewise present here—and this factor weighs toward approval. Joint Decl. ¶29.

### 3. The Risk of Maintaining Class Certification.

Without this Settlement, Plaintiffs would eventually face the risks of obtaining (and then maintaining) class certification. Joint Decl. ¶29. "Historically, data breach cases have experienced minimal success in moving for class certification." *Carter*, 2023 U.S. Dist. LEXIS 210744, at *16–17 (quoting *Gaston v. Fabfitfun, Inc.*, No. 2:20-cv-09534, 2021 U.S. Dist. LEXIS 250695, at *6 (C.D. Cal. Dec. 9, 2021)). These risks support approval because "the notion that a district court could decertify a class at any time is an inescapable and weighty risk that weighs in favor of a settlement." *Harbour*, 2024 U.S. Dist. LEXIS 7783, at *13.

### 4. The Amount of the Settlement.

The Settlement provides $495,000.00 for a class of 40,963 ($12.08 per Class Member). Agreement, ¶62; Joint Decl. ¶36. This strongly weighs toward approval because "other courts have approved settlements in privacy and security cases when each class member received just a few dollars or less." *Carter*, 2023 U.S. Dist. LEXIS 210744, at *13. Indeed, this Settlement provides more value per Class Member than analogous data breach settlements. *See, e.g., In re Loandepot Data Breach Litig.*, No. 8:24-cv-00136, 2025 U.S. Dist. LEXIS 6335, at *4 (C.D. Cal. Jan. 13, 2025) ($25 million common fund for a class of 16,924,007 ($1.48 per class member)); *In re 23Andme*, 2024 U.S. Dist. LEXIS 219622, at *23 ($30 million common fund for a class of approximately 6.4 million ($4.69 per class member)); *Harbour*, 2024 U.S. Dist. LEXIS 7783, at *10, 14 ($10 million common fund for a class of approximately 1.4 million ($7.14 per class member)).

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL

### 5. Investigation and Discovery.

This Settlement is the product of robust informal discovery—which enabled the Parties to better evaluate the strengths and weaknesses of their respective claims and defenses. Joint Decl. ¶¶ 18, 32. In particular, the Parties exchanged information about: the nature and cause of the incident, the number and location of individuals impacted by the Data Incident, and the specific type of information potentially accessed. *Id*. ¶11. Such an investigation is significant because "[f]ormal discovery is not necessary where the parties have sufficient information to make an informed decision about the settlement." *Peterson*, 2024 U.S. Dist. LEXIS 155397, at *11 (quoting *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1239 (9th Cir. 1998)) (cleaned up). Thus, this factor weighs toward preliminary approval.

### 6. The Experience and Views of Counsel.

Here, Class Counsel has substantial experience in complex litigation and data breach class actions. Joint Decl. ¶ 34. Based on this experience, Class Counsel believes that this Settlement is fair, reasonable, adequate, and in the best interests of Class Members. *Id*. ¶35. Such a recommendation is significant because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation" and "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Harbour*, 2024 U.S. Dist. LEXIS 7783, at *15 (quoting *Rodriguez v. W. Publ'g Corp*., 563 F.3d 948, 967 (9th Cir. 2009); *In re Omnivision Techs*., 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2009)). Thus, this factor weighs toward preliminary approval.

### 7. The Presence of a Government Participant.

This factor is inapplicable because the Settlement does not involve any government participant. *See* Agreement, generally.

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

### 8.  The Reaction of Class Members.

This factor is inapplicable—at this stage in the case—because Class Members have not yet had an opportunity to voice their opinions about the Settlement. Thus, this factor does not weigh toward (or against) approval.

### G.    The Court Should Approve the Notice Program.

The Court should approve the Notice Program because it directs "notice in a reasonable manner" as required by Rule 23. Fed. R. Civ. P. 23(e)(1)(B). Here, Class Members are entitled to the "best notice that is practicable under the circumstances" of any proposed settlement before it is finally approved by the Court. Fed. R. Civ. P. 23(c)(2)(B). Notice may occur by "United States mail, electronic means, or other appropriate means." *Id*. Notice must explain: (i) the action; (ii) how the class is defined; (iii) the class claims, issues, or defenses; (iv) that a class member may appear through an attorney; (v) that the court will exclude from the class any member who requests it; (vi) the time and manner for requesting exclusion; and (vii) the binding effect that class judgment has on members. *Id*. As such, due process requires that notice be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Id*. The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950); *see also Silber v. Mabon*, 18 F.3d 1449, 1453–54 (9th Cir. 1994) (noting that the court need not ensure all class members receive actual notice, only that "best practicable notice" is given).

Here, the Notice Plan satisfies due process. The Parties have agreed that "[w]ithin 30 days following entry of the Preliminary Approval Order, the Settlement Administrator shall commence the Notice Program provided herein" and that notice shall include, among other information, a description of the material

terms of this Settlement; how to submit a Claim Form; the Claim Form Deadline; the last day of the Opt-Out Period for individuals in the Settlement Class to opt-out of the Settlement Class; the last day of the Objection Period for Class Members to object to the Settlement and/or Application for Attorneys' Fees, Costs and Service Awards; the Final Approval Hearing date; and the Settlement Website address at which Class Members may access the Agreement and other related documents and information. Agreement, ¶¶75, 76. Both the Postcard Notice and Long Form Notice provide all the information required by Fed. R. Civ. P. 23(c)(2)(B). Thus, the Notice Program satisfies—and even exceeds—that which is required by due process. *In re Postmeds*, 2024 U.S. Dist. LEXIS 215466, at *26 (approving a similar notice plan).

## H.    The Court Should Appoint Class Counsel.

When certifying a class, Rule 23 requires a court to appoint class counsel that will fairly and adequately represent the class members. Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court considers counsel's work in identifying or investigating potential claims; experience in handling class actions or other complex litigation and the types of claims asserted in the case; knowledge of the applicable law; and resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A) (i–iv). The proposed Class Counsel meets these requirements. Joint Decl. ¶34. Thus, the Court should appoint Gregory Haroutunian of Emery Reddy, PC, Grayson Wells of Stranch, Jennings & Garvey, PLLC, John J. Nelson of Milberg Coleman Bryson Phillips Grossman, PPLC, and Kristen Lake Cardoso of Kopelowitz Ostrow P.A. as Class Counsel under Rule 23(g).

## I.    Proposed Schedule of Post-Settlement Events

Plaintiffs respectfully propose the following schedule for the Court's review and approval. If the Court agrees with the proposed schedule, Plaintiffs request that the Court schedule the Final Approval Hearing for the week of March 16, 2026, or such later date available on the Court's calendar.

-32-

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL

## VI.    CONCLUSION

Plaintiffs respectfully move this Court for entry of an Order: (i) granting Preliminary Approval of the Settlement; (ii) provisionally certifying the Settlement Class for settlement purposes; (iii) appointing the Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel for the Settlement Class; (iv) approving the form of the Notices and the Notice Program; (v) approving the Claim Form and the Claim process; (vi) appointing Simpluris, as the Settlement Administrator; (vii) establishing procedures and deadlines for Class Members to opt-out to object; and (viii) scheduling a Final Approval Hearing at which time the Court will consider Final Approval of the Settlement, Class certification, and Class Counsel's Application for Attorneys' Fees, Costs and Service Awards.

DATE: December 8, 2025                    Respectfully submitted,

By: */s/ Gregory Haroutunian*
M. Anderson Berry (SBN 262879)
Gregory Haroutunian (SBN 330263)
**EMERY REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Tel: (916) 823-6955
*anderson@emeryreddy.com*
*gregory@emeryreddy.com*

J. Gerard Stranch, IV (*pro hac vice*)
Grayson Wells (*pro hac vice* forthcoming)
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel: (615) 254-8801
*gstranch@stranchlaw.com*
*gwells@stranchlaw.com*

John J. Nelson (SBN 317598)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive

Beverly Hills, CA 90212
Tel: (858) 209-6941
*jnelson@milberg.com*

Kristen Lake Cardoso (SBN 338762)
**KOPELOWITZ OSTROW P.A.**
One W. Las Olas Boulevard, Suite 500
Fort Lauderdale, Florida 33301
Tel: (954) 990-2218
cardoso@kolawyers.com

*Attorneys for Plaintiffs and the Settlement Class*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.2</u>

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,993 words, which complies with the word limit of L.R. 11-6.1.

By: *<u>/s/Gregory Haroutunian</u>*
Gregory Haroutunian

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 8, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

By: *<u>/s/ Gregory Haroutunian</u>*
Gregory Haroutunian

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL