M. Anderson Berry (SBN 262879)
Gregory Haroutunian (SBN 330263)
**EMERY REDDY, PC**
600 Stewart Street, Suite 100
Seattle, WA 98101
Tel: (916) 995-5968
anderson@emeryreddy.com
gregory@emeryreddy.com

[Additional counsel on signature page]

*Attorneys for Plaintiffs and the Putative Class*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GARY MAZMANIAN and MICHAEL MCGUINNESS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LCPTRACKER, INC.,<br><br>Defendant. | Case No. 8:24-cv-02701-JAK-DFM<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: August 24, 2026<br>Time: 11:30 a.m. PT<br>Courtroom: 10C<br>Judge: Hon. John A. Kronstadt |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 24, 2026, at 11:30 a.m., or as soon thereafter as counsel may be heard, in Courtroom 10C of the United States District Court for the Central District, First Street U.S. Courthouse, 350 W 1st

Street, Los Angeles, California 90012, the Honorable Judge John A. Kronstadt, presiding, Plaintiffs Gary Mazmanian and Michael McGuinness ("Plaintiffs") hereby do and will move the Court for an Order for final approval of the Settlement and certification of the Settlement Class ("Class") pursuant to Rules 23(e) and 23(b)(3) of the Federal Rules of Civil Procedure ("Rule(s)").

In so moving, Plaintiffs respectfully request the Court: (1) approve the Class Action Settlement Agreement ("Settlement Agreement" or "SA") as fair, reasonable, and adequate under Rule 23(e); (2) finally certify the Settlement Class under Rule 23(b)(3); (3) finally appoint Plaintiffs as Class Representatives; (4) finally appoint Gregory Haroutunian of Emery Reddy, PC, Grayson Wells of Stranch, Jennings & Garvey, PLLC, John J. Nelson of Milberg Coleman Bryson Phillips Grossman, PPLC, and Kristen Lake Cardoso of Kopelowitz Ostrow P.A. as Class Counsel; (5) find the Notice Program as implemented satisfies Rule 23 and due process; (6) grant Plaintiffs' request for Service Awards; and (7) grant Plaintiffs' request for attorneys' fees and expenses.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on July 9, 2026, and is unopposed. In support, Plaintiffs include the contemporaneous Declaration of Settlement Administrator Simpluris, Inc. in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Simpluris Decl."), attached as **Exhibit 1**, and the Declaration of Greg

Haroutunian in Support of Plaintiffs' Motion for Final Approval ("Haroutunian Decl."), attached as **Exhibit 2**.

# TABLE OF CONTENTS

PAGE


I. INTRODUCTION……………………………………………………………..14

II. STATEMENT OF FACTS AND PROCEDURAL HISTORY……………15

III. SETTLEMENT TERMS……………………………………………………16

a. The Settlement Class……………………………………………………16

b. Settlement Fund and Class Member Benefits…………………………..17

1. Cash Payment A—Documented Losses…………………………...17

2. Cash Payment B—Flat Cash Payment……………………………18

3. Credit Monitoring………………………………………………………18

4. Injunctive Relief………………………………………………………...18

c. Settlement Administration and Notice to Class Members………………...18

d. Claims, Requests for Exclusions, and Objections…………………………19

e. Release……………………………………………………………………..20

f. Attorneys' Fees, Costs, and Service Awards………………………………20

IV. ARGUMENT……………………………………………………………………..21

a. The Court Should Certify the Class for Settlement Purposes……………..21

1. Rule 23(a) is Satisfied…………………………………………………...22

2. Rule 23(b)(3) is Satisfied………………………………………………..24

b. The Court Should Finally Approve the Settlement……………………......26

1. The Strength of Plaintiffs' Case, and the Risk, Expense, Complexity and Likely Duration of Further Litigation....27
2. The Amount Offered and the Adequacy and Equitability of Relief Provided by the Settlement Agreement....29
3. The Experience and Views of Counsel....32
c. Plaintiffs' Requested Fees and Expenses are Reasonable....33
1. Legal Standard....33
i. The Results Achieved Here and the Risks of Further Litigation....35
ii. The Skills Required and Quality of Work to Prosecute this Action Effectively....36
iii. Contingent Nature of the Fee....36
iv. Awards in Similar Cases....37
v. The Fee Request is Reasonable Under the Lodestar Cross-Check....38
d. The Appropriateness of the Requested Service Awards....43
V. CONCLUSION....44

# TABLE OF AUTHORITIES

**CASES** **PAGE**

*Amchem Prods. v. Windsor*
521 U.S. 591 (1997)……………………………………………………passim

*Atkinson v. Minted, Inc.*
No. 3:20-cv-03869-VC, 2021 U.S. Dist. LEXIS 244257
(N.D. Cal. Dec. 17, 2021)…………………………………………………31

*Boeing Co. v. Van Gemert*
444 U.S. 472 (1980)………………………………………………………33

*Calderon v. The Wolf Firm, A Law Corporation*
No. 8:26-cv-01266, 2018 WL 6843723 (C.D. Cal. Mar. 13, 2018)…………...32

*Charlebois v. Angels Baseball, LP*
No. SACV 10-00853 DOC (ANx), 2011 WL 2610122
(C.D. Cal. June 30, 2011)…………………………………………………21

*Chester v. TJX Cos.*
No. 5:15-cv-01437-ODW (DTB), 2017 WL 6205788
(C.D. Cal. Dec. 5, 2017)…………………………………………………28

*Chua v. City of L.A.*
No. LA CV16-00237 JAK (GJSx), 2017 WL 10776036
(C.D. Cal. May 25, 2017)………………………………………………...24

**CASES** **PAGE**

*Dennis v. Kellogg Co.*
No. 09-cv-1786-L (WMc), 2013 WL 6055326 (S.D. Cal. Nov. 14, 2013)…...28

*Ellis v. Costco Wholesale Corp.*
657 F.3d 970 (9th Cir. 2011)…...passim

*Franklin v. Kaypro Corp.*
884 F.2d 1222 (9th Cir. 1989)…27

*G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*
894 F. Supp. 2d 415 (S.D.N.Y. 2012)…41

*Gaston v. FabFitFun, Inc.*
No. 2:20-cv-09534-RGK-E, 2021 WL 3362028 (C.D. Cal. Apr. 2, 2021)…...31

*Gaston v. Fabfitfun, Inc.*
No. 2:20-cv-09534-RGK-E, 2021 WL 6496734 (C.D. Cal. Dec. 9, 2021)…38

*Gonzalez v. City of Maywood*
729 F.3d 1196 (9th Cir. 2013)…40

*Gregorson v. Toshiba America Business Solutions, Inc.*
No. 8:24-cv-01201-FWS-ADS, 2025 WL 2671589 (C.D Cal. 2025)…...26

**CASES** **PAGE**

*Hanlon v. Chrysler Corp.*
150 F.3d 1011 (9th Cir. 1998)……………………………………………Passim

*Hashemi et al. v. Bosley*
No. 2:21-00946, 2022 WL 18278431 (C.D. Cal. Nov. 21, 2022)……………..41

*Hashemi v. Bosley*
2022 WL 2155117 (C.D. Cal. 2022)…………………………………………21

*Hicks v. Toys 'R' Us-Del., Inc.*
No. 2:13-cv-01302 DSF (JCGx), 2014 WL 4670896
(C.D. Cal. Sept. 2, 2014)……………………………………………………41

*In re Am. Apparel, Inc. S'holder Litig.*
No. CV-1006352 MMM (JCGx) 2014 WL 10212865
(C.D. Cal. July 28, 2014)……………………………………………………36

*In re Anthem Data Breach Litig.*
327 F.R.D. 299 (C.D. Cal. 2023)……………………………………………31

*In re Bluetooth Headset Prods. Liab. Litig.*
654 F.3d 935 (9th Cir. 2011)………………………………………...passim

*In re Capacitors Antitrust Litig.*
No. 3:17-md-02801-JD, 2018 WL 4790575 (N.D. Cal. Sept. 21, 2018)……...38

**CASES** **PAGE**

*In re Corrugated Container Antitrust Litig.*
643 F.2d 195 (5th Cir. 1981)……………………………………………..29

*In re Equifax Customer Data Sec. Breach Litig.*
MDL No. 2800; No. 1:17-md-2800-TWT, 2020 U.S. Dist. LEXIS 118209
(N.D. Ga. Mar. 17, 2020)………………………………………………passim

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*
No. 02-cv-3400 (CM), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)………...39

*In re Fortive Data Sec. Litig.*
No. 2:24-cv-01668-RAJ, 2026 WL 178738
(W.D. Wash. Jan. 22, 2026)……………………………………………35, 37

*In re Lenovo Adware Litig.*
No. 15-md-02624-HSG, 2019 WL 1791420
(N.D. Cal. Apr. 24, 2019)……………………………………………...34

*In re MRV Communs., Inc. Derivative Litig.*
No. CV 08-03800 GAF (MANx), 2013 WL 2897874
(C.D. Cal. June 6, 2013)………………………………………………29

*In re Omnivision Techs., Inc.*
559 F. Supp. 2d 1036 (N.D. Cal. 2007)………………………………..35

**CASES** **PAGE**

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*
No. 3:15-md-2633- SI, 2019, WL 3410382
(D. Or. July 29, 2019)……………………………………………………22

*In re Toys R Us-Del., Inc. – Fair and Accurate Credit Transactions Act (FACTA)*
*Litig.,* 295 F.R.D. 438 (C.D. Cal. 2014)…………………………………38

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
2017 WL 2214655 (N.D. Cal. March 17, 2017)……………………………40

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*
19 F.3d 1291 (9th Cir. 1994)……………………………………………..37

*Just Film, Inc. v. Buono*
847 F.3d 1108 (9th Cir. 2017)……………………………………………22

*Keegan v. Am. Honda Motor Co*
284 F.R.D. 504 (C.D. Cal. 2012)………………………………………...24

*Linney v. Cellular Alaska P'ship*
151 F.3d 1234 (9th Cir. 1998)……………………………………………28

*McDaniel v. Toshiba Glob. Com. Sols., Inc.*
No. 8:24-cv-01772, 2025 WL 3190888
(C.D. Cal. Oct. 3, 2025)…………………………………………………28

**CASES** **PAGE**

*Monterrubio v. Best Buy Stores, L.P.*
291 F.R.D. 443 (E.D. Cal. 2013)……………………………………………37

*Moreno v. City of Sacramento*
534 F.3d 1106 (9th Cir. 2008)……………………………………………42

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*
221 F.R.D. 523 (C.D. Cal. 2004)……………………………………….....33

*Nitsch v. DreamWorks Animation SKG, Inc.*
No. 14-cv-04062-LHK, 2017 WL 2423161
(N.D. Cal. June 5, 2017)……………………………………………………40

*Pagh v. Wyndham Vacation Ownership, Inc.*
No. 8:19-cv-00812-JWH-ADSx, 2021 WL 3017517
(C.D. Cal. Mar. 23, 2021)…………………………………………………...35

*Perez v. Rash Curtis & Associates*
No. 4:16-cv-03396-YGR, 2020 WL 1904533
(N.D. Cal. April 17, 2020)…………………………..............................38

*Pfeiffer v. Radnet, Inc.*
No. 2:20-cv-09553-RGK-SK, 2022 WL 2189533
(C.D. Cal. Feb. 15, 2022)…………………………………………………38

**CASES** **PAGE**

*Reynoso v. All Power Mfg. Co.*
No. SACV 16-1037 JVS (JCGX), 2018 WL 5906645
(C.D. Cal. Apr. 30, 2018)…………………………………………………..24

*Rodriguez v. W. Publ'g Corp.*
563 F.3d 948 (9th Cir. 2009)…………………………………………………..43

*Staton v. Boeing Co.*
327 F.3d 938 (9th Cir. 2003)…………………………………………………33, 34

*Tallman v. CPS Sec. (USA), Inc.*
23 F. Supp. 3d 1249 (D. Nev. 2014)…………………………………………41

*Tyson Foods, Inc. v. Bouaphakeo*
577 U.S. 442 (2016)……………………………………………………………passim

*Vizcaino v. Microsoft Corp.*
290 F.3d 1043 (9th Cir. 2002)…………………………………………………passim

*Wal-Mart Stores, Inc. v. Dukes*
564 U.S. 338 (2011)……………………………………………………………22

*Zinser v. Accufix Rsch. Inst., Inc.*
253 F.3d 1180 (9th Cir. 2001)………………………………………………..23, 24

**STATUTES** **PAGE**

Fed. R. Civ. P. 23(a)(4)………………………………………………………..23

Fed. R. Civ. P. 23(b)(3)……………………………………………………...passim

Fed. R. Civ. P. 23(e)………………………………………………………passim

Fed. R. Civ. P. 23(a)………………………………………………………passim

Fed. R. Civ. P. 23(b)(1), (2) or (3)…………………………………………….23

Fed. R. Civ. P. 23(e)(2)………………………………………………………..26

Fed. R. Civ. P. 23(h)…………………………………………………………..33

**OTHER AUTHORITIES** **PAGE**

MANUAL FOR COMPLEX LITIG. (4th ed. 2004)…………………………………21

*2022 Real Rate Report: The Industry's Leading Analysis of Law Firm Rates,Trends, and Practices*……………………………………………...41

## I. INTRODUCTION

Plaintiff, through his undersigned counsel, respectfully moves this Court for entry of an order granting final approval to the settlement memorialized in the Settlement Agreement, ECF No. 34-1,[1] that subject to the Court's approval, will resolve this class action. Plaintiffs filed their Unopposed Motion for Preliminary Approval ("MPA"), ECF No. 34, on December 8, 2025. Following a hearing on Plaintiffs' MPA, Plaintiffs filed a Supplemental Memorandum in Support of Plaintiffs' MPA approval pursuant to the Court's direction at the February 2, 2026, hearing and the subsequently filed Minute Order dated February 4, 2026, ECF No. 38. On March 30, following Plaintiffs' Supplemental Memorandum, the Court granted-in-part Plaintiffs' MPA and (1) conditionally certified the Settlement Class as defined in the Settlement Agreement; (2) preliminarily approved the Settlement Agreement as fundamentally fair, reasonable, and adequate; (3) appointing Gregory Haroutunian of Emery Reddy, PC; Grayson Wells of Stranch, Jennings & Garvey, PLLC; John J. Nelson of Milberg, PLLC; and Kristen Lake Cardoso of Kopelowitz Ostrow P.A. as Class Counsel; (4) appointing Simpluris, Inc. ("Simpluris") as Settlement Administrator; (5) holding the proposed Notice Program to be reasonable; (6) preliminarily determining a reasonable award of attorneys' fees to

[1] Unless otherwise indicated, the defined terms herein shall have the same definition as set forth in the Settlement Agreement.

range from $90,000 to $135,000; and (7) preliminarily determining a reasonable Service Award for the Class Representatives to range from $1,000 to $2,500.

Plaintiffs respectfully request the Court finally certify the Settlement Class for settlement purposes, finally approve the Settlement as fair, reasonable and adequate, approve Plaintiffs' request for attorneys' fees and expense reimbursement, and approve Plaintiffs requested Service Awards.

## II. STATEMENT OF FACTS AND PROCEDURAL HISTORY

Defendant provides payroll reporting software, construction site compliance management, and workforce reporting services. As part of its business, Defendant collected and continues to collect Private Information ("PI") from thousands of its clients' and permitted users' employees, and vendors, as well as other persons. In August 2024, an unauthorized actor accessed Defendant's network and accessed the PI of approximately 42,135 individuals, which Plaintiffs allege resulted from Defendant's failure to implement adequate data security measures.

On December 14, 2024, Plaintiff Mazmanian filed his initial Class Action Complaint for the unlawful exposure of his and all similarly situated individuals' PI, seeking damages and injunctive relief. SA ¶ 4. On December 30, 2024, Plaintiff McGuinness filed his initial Class Action Complaint against Defendant seeking similar relief on behalf of a similar class of individuals. *Id.* ¶ 5. The related actions

were consolidated, and on April 9, 2025, Plaintiffs filed the operative Complaint. *Id.* ¶ 6.

In light of the risk and expense of continued litigation, the Parties began discussing settlement and scheduled a mediation with experienced mediator Hon. David E. Jones (ret.) for July 16, 2025. *Id.* ¶ 6. In advance of the mediation, Defendant provided informal discovery regarding the Data Incident and the Class. *Id.* ¶ 10. The Parties did not reach an agreement at mediation but continued to negotiate, and on or about July 22, 2025, after arms-length negotiations between experienced counsel, the Parties reached an agreement in principle to resolve all claims on a class wide basis. *Id.* ¶¶ 11–12. The finalized Settlement Agreement was executed on December 8, 2025. *Id.* ¶ 13.

Plaintiffs filed their MPA on December 8, 2025. After the February 2, hearing and February 4, 2026, Minute order, Plaintiffs filed a Supplemental Memorandum in Support of Plaintiffs' MPA, ECF Nos. 38, 39. On March 30, the Court granted-in-part Plaintiffs' MPA. ECF No. 43.

## III. SETTLEMENT TERMS

### a. The Settlement Class

The proposed Settlement Class is defined as: All United States residents to whom Defendant sent an individual notification that they were affected by the Data Incident. SA ¶ 59. Excluded from the Settlement Class are: (1) all persons who are

directors, officers, and agents of Defendant, or their respective subsidiaries and affiliated companies; (2) governmental entities; and (3) the Judge assigned to the Action, that Judge's immediate family, and Court staff. *Id.*

**b. Settlement Fund and Class Member Benefits**

The Settlement provides for a non-reversionary cash Settlement Fund of $495,000.00, used to pay (1) all Class Member Benefits to Class Members who submit Valid Claims; (2) all Settlement Administration Costs; and (3) any attorneys' fees, costs, and Service Awards awarded by the Court. *Id.* ¶¶ 62, 66. When submitting a Valid Claim, Class Members may elect to claim Cash Payment A and/or B. Additionally, Class Members may elect to receive Credit Monitoring. *Id.* ¶ 69. Cash Payments to Class Members will be subject to a *pro rata* increase or decrease so as to fully exhaust the Net Settlement Fund. Any *pro rata* increases or decreases will be on an equal percentage basis. *Id.* ¶ 69.

**1. Cash Payment A—Documented Losses**

Class Members may submit a claim for up to $2,500.00 in reimbursement for reasonable documented losses related to the Data Incident, subject to *pro rata* adjustments. To receive a documented loss payment, a Class Member must elect Cash Payment A on the Claim Form attesting under penalty of perjury to incurring documented losses and must submit reasonable documentation supporting the

losses. Class Members shall not be reimbursed for expenses if they have been reimbursed for the same expenses by another source. *Id.* ¶69(a).

**2. Cash Payment B—Flat Cash Payment**

A Class Member, regardless of whether they submitted a claim for Cash Payment A, may elect to receive Cash Payment B, estimated to be $50.00, subject to *pro rata* adjustments. *Id.* ¶ 69(b).

**3. Credit Monitoring**

Class Members may also make a claim for two years of credit monitoring by one credit bureau, together with identity theft protection and $1,000,000 worth of insurance against identity theft. *Id.* ¶ 69(c).

**4. Injunctive Relief**

Prior to the Final Approval hearing, Plaintiffs will receive from Defendant a written attestation regarding the security measures Defendant has implemented (or will implement) to better protect the Settlement Class' PI from future disclosure, including their costs. The costs were or shall be paid separately by Defendant and not from the Settlement Fund. *Id.* ¶ 69(d).

**c. Settlement Administration and Notice to Class Members**

Pursuant to the Court's Order Granting Plaintiffs' MPA, Simpluris, initiated the Notice Program by first-class mail. Simpluris Decl. ¶ 9. Simpluris sent the Postcard Notice to 42,116 Class Members, *id.* ¶ 9 and believes the Postcard Notice

reached 40,844 of the 42,135 Class Members for a reach rate of approximately 96.93%. *Id.* ¶¶ 7–11. Simpluris established a dedicated Settlement Website, https://lcptrackerdataincident.com/, with settlement information, key documents, FAQs, contact information, and online claim submission, as well as a toll-free number for additional information. *Id.* ¶¶ 12–13.

**d. Claims, Requests for Exclusions, and Objections**

Per the Court's Order, the Claims Deadline is August 8, 2026, and the Objection and Opt-out Deadline is July 24, 2026. The reaction of the Settlement Class has been overwhelmingly positive thus far. *See* Simpluris Decl. ¶¶ 14–21. As of July 5, 2026, only 1 objection[2] has been filed and 0 individuals have requested exclusion from this Settlement. *Id.* ¶¶ 19, 21. Moreover, 948 claims have already been received by the Settlement Administrator, representing a 2.25% claims rate. *See id.* ¶ 14. Such a claims rate is standard, if not higher, than the range of claims rates in other data breach class action settlements within this Circuit. *See Carter v. Vivendi Ticketing US LLC*, 2023 WL8153712 *9 (C.D. Cal.) (1.6% claims rate); *Corona v. Sony Pictures Entertainment, Inc.,* No. 2:14-cv-9600 (C.D. Cal.) ECF Nos. 145-1 at 11 n.8, 164 at 2 (0.7% claims rate); *Cochran, et al. v. Kroger Co.*, No. 5:21-cv-01887, (N.D. Cal.), ECF Nos. 108 at 4-6, 108-1 ¶ 4 (2.1% claims rate).

[2] Any objections received, including the one already received, will be addressed in a subsequent supplemental filing after the objection deadline has passed.

Because the Deadline has not yet passed, the claims rate is subject to change and likely to increase. *See* Simpluris Decl. ¶ 14.

**e. Release**

Upon entry of the Final Approval Order, Plaintiffs and the Settlement Class, in exchange for the Class Member Benefits, will release all Released Claims against Defendant. *Id.* §XIII.

**f. Attorneys' Fees, Costs, and Service Awards**

Under the terms of the Settlement Agreement, Class Counsel move the Court for an award of their reasonable attorneys' fees incurred in the Action. The court preliminarily determined a reasonable award of attorneys' fees to range from $90,000 to $135,000, and as such Plaintiffs request $135,000.00 in attorneys' fees. This amount represents a negative multiplier of 0.71 on Class Counsel's lodestar as of the filing of this Motion and does not account for all subsequent work to be performed by Class Counsel. Haroutunian Decl. ¶¶ 21–22. Additionally, Class Counsel incurred a total of $5,162.08 in litigation expenses for which they are seeking reimbursement. *Id.* ¶ 21. Finally, the Settlement Agreement also states that Class Counsel may request Service Awards up to $3,000.00 for each of the Plaintiffs in recognition of their time and effort expended in pursuing this Action. SA ¶ 99.

///

///

## IV. ARGUMENT

### a. The Court Should Certify the Class for Settlement Purposes

Before assessing a parties' settlement, the Court should confirm Rule 23(a)'s requirements—numerosity, commonality, typicality, and adequacy—each of which is met here. Fed. R. Civ. P. 23; *see Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); MANUAL FOR COMPLEX LITIG. § 21.632 (4th ed. 2004). *Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 979–80 (9th Cir. 2011). The Court found the Settlement Class met these requirements in its Preliminary Approval Order and provisionally certified the Settlement Class for settlement purposes. *See* ECF No. 43. Plaintiffs respectfully submit final certification.

#### 1. Rule 23(a) is Satisfied

The Settlement Class includes approximately 42,135 individuals, Simpluris Decl. ¶ 7, and therefore readily satisfies the numerosity requirement. *See* Fed. R. Civ. P. 23(a)(1); *Hashemi v. Bosley*, 2022 WL 2155117 *2 (C.D. Cal. 2022) ("Courts generally presume numerosity when there are at least 40 members in the proposed class." (citing *Charlebois v. Angels Baseball, LP*, No. SACV 10-00853 (ANx), 2011 WL 2610122, at *4 (C.D. Cal. June 30, 2011)). The Class also satisfies the commonality requirement, which requires class members' claims "depend upon a common contention" of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke."

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, as in most data breach cases, courts in the Ninth Circuit have found that these common issues all center around Defendant's alleged misconduct, satisfying the commonality requirement. *See, e.g.*, *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 3:15-md-2633- SI, 2019 WL 3410382, at *10 (D. Or. July 29, 2019); *Hashemi*, 2022 WL 2155117, at *3Thus, common questions include, among many others, whether Defendant engaged in the wrongful conduct alleged; whether Class Members' PI was compromised during the Data Incident; whether Defendant owed a duty to Plaintiffs and Class Members and breached its duty; and whether Defendant unreasonably delayed notifying Plaintiffs and Class Members of the material facts of the Data Incident.

Typicality and adequacy are also easily met for purposes of settlement. Plaintiffs' claims are typical of the proposed Class because they are based on Defendant's alleged failure to protect Plaintiffs' and Class Members' PI and are therefore "reasonably coextensive with those of the absent class members." *See* Fed. R. Civ. P. 23(a)(3). Plaintiffs allege their PI was compromised, and that Defendant's same alleged poor data security practices caused them the same injury that the Class suffered. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017) ("[I]t is sufficient for typicality if the plaintiff endured a course of conduct directed against the class.").

Plaintiffs are also adequate class representatives because (1) there are no antagonistic or conflicting interests between Plaintiffs and their counsel and the absent Class Members; and (2) Plaintiffs and their counsel have vigorously prosecuted the action on behalf of the Class. Fed. R. Civ. P. 23(a)(4); *see also Ellis,* 657 F.3d at 985 (citing *Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other grounds by Dukes*, 131 S.Ct. at 2541). Plaintiffs have no conflicts of interest with other Class Members, are not subject to unique defenses, and they and their counsel have and continue to vigorously prosecute this case on behalf of the Class. Haroutunian Decl. ¶ 7. Plaintiffs are members of the Class who have experienced the same injuries and seek, like other Class Members, compensation. *See id.* As such, Plaintiffs' and Class Counsel's interests align with those of the Class. *See id.* Further, Class Counsel have decades of combined experience as class action advocates and are well suited to litigate on behalf of the Class. *See id.* ¶ 16; *see* Joint Decl. in Supp. of Pl.'s Mtn. for Preliminary Approval ("Joint Decl."), Exs. 1–4 (firm resumes). Thus, Plaintiffs will adequately protect the interests of the Class.

**2. Rule 23(b)(3) is Satisfied**

In addition to meeting the conditions imposed by Rule 23(a), parties seeking class certification must also show that the action is maintainable under Rule 23(b)(1), (2) or (3). *See Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1186 (9th

Cir. 2001). Here, Plaintiffs allege the Settlement Class is maintainable for purposes of settlement under Rule 23(b)(3), as common questions predominate over any individual questions and class resolution is superior to other available methods for a fair and efficient resolution of the controversy. *Hanlon*, 150 F.3d at 1022.

Common questions of law and fact predominate over individualized questions. Courts analyze whether a *prima facie* showing of liability can be proved by common evidence or whether this showing varies from member to member. *Reynoso v. All Power Mfg. Co.*, No. SACV 16-1037 JVS (JCGX), 2018 WL 5906645, at *3 (C.D. Cal. Apr. 30, 2018) (citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)). If, to make a *prima facie* showing on an issue, plaintiffs will need to present evidence that varies from one class member to the next, then the issue raises an individual question. *Chua v. City of L.A.*, No. LA CV16-00237 JAK (GJSx), 2017 WL 10776036, at *9 (C.D. Cal. May 25, 2017). If the same evidence can suffice for each member of the class on an issue, then it becomes a common question. *Id.* (citing *Tyson Foods, Inc.*, 577 U.S. at 453) Courts in the Ninth Circuit find predominance where there is a sufficient constellation of common issues that binds class members together. *Keegan v. Am. Honda Motor Co*, 284 F.R.D. 504, 545 (C.D. Cal. 2012).

Plaintiffs' claims depend, first and foremost, on whether Defendant used reasonable data security measures to protect their PI. That question can be resolved

using the same evidence for all Class Members and thus is precisely the type of predominant question that makes a class-wide settlement worthwhile. *See, e.g.*, *Tyson Foods, Inc.*, 577 U.S. at 453 ("When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) . . . .") (internal quotation omitted).

Rule 23(b)(3) also requires that a "class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy" and is intended to cover cases "in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615. Four factors are pertinent to this inquiry: (a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action. *See* Fed. R. Civ. P. 23(b)(3). Here class treatment of Plaintiffs' and the Class's claims is superior to individual actions because a class action will be more efficient and conserve costs, time, and effort. The relatively minor amount of damages traceable to each Class Member on an individual basis would not justify the pursuit of separate lawsuits across the country.

Additionally, a class action is the superior method of adjudicating consumer claims arising from the Data Incident. *See, e.g.*, *Gregorson v. Toshiba America Business Solutions, Inc.*, No. 8:24-cv-01201-FWS-ADS, 2025 WL 2671589, at *3 (C.D Cal. 2025). Further, the Class consists of thousands of individuals who, should they be required to bring individual cases, would submit identical factual evidence regarding Defendant's liability and seek redress for the same types of injuries, yet risk having different outcomes, even though their claims arise out of the same conduct and the same Data Incident. All these considerations demonstrate the superiority of a class action here.

**b. The Court Should Finally Approve the Settlement**

Rule 23(e) provides that a proposed class action may be "settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). For a proposed class action to be approved, the Court must determine, after a hearing, that it is fair, adequate, and reasonable. Rule 23(e)(2) identifies specific factors for a district court to consider in determining whether a settlement is fair, reasonable, and adequate, including whether the class representatives and class counsel had adequately represented the class; whether the proposal was negotiated at arm's length; and whether the relief provided for the class is adequate. The Ninth Circuit has also identified nine factors to consider in analyzing the fairness, reasonableness, and adequacy of a class settlement: (1) the strength of plaintiffs'

case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the views of counsel; (7) the presence of a governmental participant (not applicable here); (8) the reaction of the class members to the proposed settlement; and (9) whether the settlement is a product of collusion among the parties. *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 946 (9th Cir. 2011). Each of these factors weighs in favor of approval here.

In applying these factors, the guiding principle for courts remains that settlements of class actions are preferable. *See Franklin v. Kaypro Corp*., 884 F.2d 1222, 1229 (9th Cir. 1989) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits."). Here, the relevant factors support the conclusion that the negotiated Settlement is fundamentally fair, reasonable, and adequate, and should be finally approved.

#### 1. The Strength of Plaintiffs' Case, and the Risk, Expense, Complexity and Likely Duration of Further Litigation

Plaintiffs believe they have a strong case for liability. In particular, Plaintiffs believe ample evidence will establish that Defendant failed to maintain reasonable data security practices, which led directly to the loss of Plaintiffs' and the Class's PI. Haroutunian Decl. ¶ 14. Moreover, Plaintiffs believe that once they establish

that Defendant's data security measures were inadequate, Defendant is likely to be found liable under at least some of the theories of liability pled in the Complaint.

However, Plaintiffs' success is not guaranteed. The actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication. *Id.*; *see also Dennis v. Kellogg Co.*, No. 09-cv-1786-L (WMc), 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013). "Here, as with most class actions, there was risk to both sides in continuing towards trial. The settlement avoids uncertainty for all parties involved." *Chester v. TJX Cos.*, No. 5:15-cv-01437-ODW (DTB), 2017 WL 6205788, at *6 (C.D. Cal. Dec. 5, 2017). This case involves approximately 42,135 individuals and technical factual background in a relatively novel area: data breach litigation. Although nearly all class actions involve a high level of risk, expense, and complexity—undergirding the strong judicial policy favoring amicable resolutions, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)—data breach class actions are particularly risky and complex. *See, e.g.*, *McDaniel v. Toshiba Glob. Com. Sols., Inc.*, No. 8:24-cv-01772, 2025 WL 3190888, at *6 (C.D. Cal. Oct. 3, 2025) ("There are also significant risks associated with class certification, summary judgment, and trial, especially in this data breach case when tying Plaintiff's alleged injuries to this particular data breach may be difficult."). Moreover, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages.

*McDaniel*, 2025 WL 3190888, at *6. For now, data breach cases are among the riskiest and most uncertain of all class action litigation, making accepting a favorable settlement the more prudent course. The damages methodologies, while theoretically sound in Plaintiffs' view, remain untested in a disputed class certification setting and unproven in front of a jury. *See Hashemi*, 2022 WL 2155117, at *4 (explaining that "data breach class actions are a relatively new type of litigation and that damages methodologies in data breach cases are largely untested and have yet to be presented to a jury"). As in any data breach case, establishing causation on a class-wide basis also remains uncertain. Given the challenges and inherent risks Plaintiffs face with respect to the novel claims characteristic of data breach actions, including class certification, summary judgment, and trial, the substantial benefits of the Settlement favor final approval.

**2. The Amount Offered and the Adequacy and Equitability of Relief Provided by the Settlement Agreement**

A settlement should stand or fall on the adequacy of its terms. *In re MRV Communs., Inc. Derivative Litig.*, No. CV 08-03800 GAF (MANx), 2013 WL 2897874, at *4 (C.D. Cal. June 6, 2013) (citing *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981)). The Settlement here reflects an excellent result in light of the challenges that come with data breach litigation. The Settlement is tailored to the specific injuries of Class Members and provides equitable treatment as Class Members may claim relief according to the specific

harms suffered. Specifically, the Settlement provides substantial monetary relief to Class Members, including (i) Out-of-Pocket Expense Reimbursement of up to $2,500; and (ii) a *Pro Rata* Cash Payment based on shares to Class Members who submit a Valid Claim to receive this benefit. SA ¶ 69. The Settlement also provides Credit Monitoring, and it involves significant business practice enhancements for Defendant's data security system, which will help to protect the Settlement Class's PI going forward. *Id.* The $495,000.00 Settlement Fund, excluding the non-cash benefit, represents a recovery of approximately $11.75 per Class Member ($495,000.00 / 42,135 Class Members), which is on the higher end of recoveries in data breach class actions, as can be seen from the following chart of representative cases.

| Case | No. of Class Members | Settlement Fund | Amount Per Class Member |
|---|---|---|---|
| *In re Equifax Customer Data Sec. Breach Litig.*, 2020 WL 256132, at *145, 149–50 (N.D. Ga. Mar. 17, 2020). | >147M | $380.5M | $2.59 |
| *Atkinson v. Minted, Inc.*, 2021 WL 6028374, at *2–4 (N.D. Cal. Dec. 17, 2021). | 4.2M | $5M | $1.19 |
| *In re Anthem Data Breach Litig.*, 327 F.R.D. 299 (C.D. Cal. 2023). | 79.15M | $115M | $1.45 |
| *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2807; MDL No. 2807, 2019 WL 3773737, at *3, 5 (N.D. Ohio Aug. 12, 2019). | 1.5M | $4.325M | $2.88 |
| *Gaston v. FabFitFun, Inc.*, 2021 WL 3362028, at *7–8 (C.D. Cal. Apr. 2, 2021). | 441K | $625K | $1.42 |

Considering that this is an unsettled area of law fraught with the risk that the Class would not be certified and that Plaintiffs would not succeed at trial, the Settlement represents an excellent compromise of Plaintiffs' and the Class Members' claims. Joint Decl. ¶ 29.

Additionally, the reaction of the Class supports a finding of fairness as well. The reaction of the Settlement Class has been overwhelmingly positive. *See* Simpluris Decl. ¶¶ 14–21. As of July 5, 2026, only 1 objection has been filed, and

0 individuals have requested exclusion from this Settlement. Moreover, 948 claims have already been received by the Settlement Administrator, representing a 2.25% claims rate. As such, and because the Settlement here is similar to other settlements that courts, including those in this district, have approved, the Settlement is fair. *See Calderon v. The Wolf, A Law Corporation*, No. 8:26-cv-01266, 2018 WL 6843723, at *8 (C.D. Cal. Mar. 13, 2018) (comparing class settlement with other settlements in similar cases).

**3. The Experience and Views of Counsel**

Class Counsel have substantial experience litigating complex class cases of various types, including data breach cases such as this one. *See* Joint Decl. ¶ 29; Haroutunian Decl. ¶ 16. Class Counsel's experience in similar types of privacy and data protection practices provided substantive knowledge to enable Class Counsel to represent Plaintiffs' and Class Members' interests and have informed settlement discussions without expending significant time and money to come up to speed on the subject area. Joint Decl. ¶¶ 34–35. Indeed, Plaintiffs gathered all publicly available information regarding the Data Breach and Defendant and received informal discovery regarding the Settlement Class. *Id.* Using their experience, Class Counsel was able to negotiate a substantial, multifaceted settlement agreement. The Parties did not negotiate attorneys' fees and the Service Award until after agreement on all substantive portions of the class resolution had been reached, and both the

class portion of the Settlement and the attorneys' fees and the Service Awards were negotiated during numerous and periodic arms'-length negotiations.

Having worked on behalf of the Class since the Data Incident was first announced, evaluated the legal and factual disputes, and dedicated significant time and resources to this litigation, Class Counsel fully endorse the Settlement. Joint Decl. ¶¶ 32–33. A great deal of weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. *See, e.g.*, *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc*., 221 F.R.D. 523, 528 (C.D. Cal. 2004).

**c. Plaintiffs' Requested Fees and Expenses are Reasonable**

**1. Legal Standard**

Under the "common fund" or "common benefit" doctrine, "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). *See also* Rule 23(h) ("[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or the parties' agreement."). This rule is equitable in nature and "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Id.* at 478*; see also Staton v. Boeing Co*., 327 F.3d 938, 967 (9th Cir. 2003) ("the

common fund doctrine permits the court to award attorneys' fees from monetary payments that the prevailing party recovered.").

Under Ninth Circuit law, where the percentage-of-recovery method is employed, it is well established that 25 percent of the common fund is the "benchmark" award of attorney's fees. *See, e.g.*, *In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."). District Courts will often use a lodestar figure, which "is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer," to cross-check the reasonableness of the proposed fee award. *In re Bluetooth*, 654 F.3d at 941 (citing *Staton*, 327 F.3d at 965).

In assessing the reasonableness of the percentage of recovery method, courts look to "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *In re Lenovo Adware Litig.*, No. 1—md-02624-HSG, 2019 WL 1791420, at *8 (N.D. Cal. Apr. 24, 2019) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050–51 (9th Cir. 2002)).

Class Counsel respectfully submits that the requested fee award of 27.27% percent of the Settlement Fund, or $135,000.00, is reasonable under the percentage of recovery methodology, and have provided the Court with sufficient detail herein to perform a lodestar calculation crosscheck that further supports that finding.

**i. The Results Achieved Here and the Risks of Further Litigation**

As described in further detail above, the results achieved here, particularly in light of the risk of further litigation, support an award of the requested fees. "The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *Pagh v. Wyndham Vacation Ownership, Inc.*, 8:19-cv-00812-JWH-ADSx, 2021 WL 3017517, at *2 (C.D. Cal. Mar. 23, 2021) (citing *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008)). The case involves a highly technical and complex area of litigation: data breach litigation. Indeed, Ninth Circuit Courts and Courts around the country have recognized the risks of data breach cases. *See In re Fortive Data Sec. Litig.*, No. 2:24-cv-01668-RAJ, 2026 WL 178738, at *3 (W.D. Wash. Jan. 22, 2026) (finding that the requested 1/3 award of the non-revisionary common fund was fair, reasonable, and appropriate in part because of the novelty and complexity of data breach litigation). Additionally, the lack of direct precedent certifying data breach cases as class actions creates a substantial risk of achieving no recovery should a settlement not been reached. In light of these facts, the Settlement affords the Class substantial

relief and provides significant recovery that is comparable, and generally higher, than other similar data breach class actions settlements. *See, e.g.*, *Medtronic*, 2025 WL 2934516, at *7 (approving similar settlement providing $475,000 for a class of 54,475, equal to $8.72 per Class Member).

**ii. The Skills Required and Quality of Work to Prosecute this Action Effectively**

Class Counsel's skill and experience in complex class actions also favor the requested fee award here. The descriptions of the backgrounds and experience of Class Counsel demonstrate that Class Counsel are experts in the highly specialized field of class action litigation, well credentialed, and equal to the difficult and novel tasks at hand. Class Counsel was able to utilize their particular skills to further the Action and eventually obtain a highly favorable settlement agreement. *See Vizcaino*, 290 F.3d at 1050 n.5 (noting that early resolution may be a relevant factor). They were also equal to the experience and skill of the lawyers representing Defendant, a factor to be considered here. *See In re Am. Apparel, Inc. S'holder Litig.*, No. CV-1006352 MMM (JCGx), 2014 WL 10212865, at *22 (C.D. Cal. July 28, 2014) ("In addition to the difficulty of the legal and factual issues raised, the court should also consider the quality of opposing counsel as a measure of the skill required to litigate the case successfully.").

**iii. Contingent Nature of the Fee**

"Courts have long recognized that the attorneys' contingent risk is an

important factor in determining the fee award and may justify awarding a premium over an attorney's normal hourly rates." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 457 (E.D. Cal. 2013) (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994)). Here, Class Counsel has prosecuted this case on a 100% contingent fee basis. Haroutunian Decl. ¶ 26. As such, Class Counsel has borne the risk of potentially never being paid for their work or reimbursed for the litigation expenses had the lawsuit not resulted in a favorable outcome for the Class. Further, given that this litigation centers on a developing area of law, the contingent nature of the case is even more important when determining an attorney's fee award. *See Medtronic*, 2025 WL 2934516, at *8.

**iv. Awards in Similar Cases**

The requested fee percentage of 27.27% is reasonable when compared to reported data-breach class-action fee orders in the 9th Circuit. *See Medtronic*, 2025 WL 2934516, at *8 (finding 33.33% of $475,000 gross settlement fund for roughly 60,000 class members to be reasonable); *In re Fortive Data Sec. Litig.*, 2026 WL 178738, at *3 (finding that the requested 1/3 award of the non-revisionary common fund was fair, reasonable, and appropriate in light of "(a) the time and labor required, the novelty and complexity of data breach litigation, and the skill necessary to prosecute this action (b) Counsel's experience and reputation in complex class litigation; (c) the contingent nature of Class Counsel's representation

and the risk of nonpayment; and (d) the significant benefit conferred upon the Settlement Class."); *see also Gaston v. Fabfitfun, Inc.*, No. 2:20-cv-09534-RGK-E, 2021 WL 6496734 (C.D. Cal. Dec. 9, 2021) (finding attorneys' fees of 25% of the settlement fund in a data breach class action reasonable); *Pfeiffer v. Radnet, Inc.*, No. 2:20-cv-09553-RGK-SK, 2022 WL 2189533 *2–3 (C.D. Cal. Feb. 15, 2022) (finding that attorneys' fees of 25% of the $2,600,000 settlement fund in a data breach class action was reasonable). Moreover, "courts will often grant fees above the 25% benchmark in cases involving smaller funds." *See Medtronic*, 2025 WL 2934516, at *7.

**v. The Fee Request is Reasonable Under the Lodestar Cross-Check**

Where the use of the lodestar method is used as a cross-check, it can be performed with a less exhaustive review and analysis of hours. *In re Capacitors Antitrust Litig.*, 2018 WL 4790575, at *6 (N.D. Cal. Sept. 21, 2018) (the cross-check does not require "mathematical precision nor bean-counting") (citation omitted); *In re Toys R Us-Del., Inc.–Fair and Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 460 (C.D. Cal. 2014) ("In cases where courts apply the percentage method to calculate fees, they should use a rough calculation of the lodestar as a cross-check to assess the reasonableness of the percentage award."). Courts apply similar factors to those under the percentage of recovery method to support awards under the lodestar calculation. *Perez v. Rash Curtis & Associates*,

No. 4:16-cv-03396-YGR, 2020 WL 1904533, at *21 (N.D. Cal. April 17, 2020) (citations and marks omitted).

As set forth above, each of these factors weigh heavily in favor of the conclusion that the fee request of $135,000.00 is reasonable. *See* Haroutunian Decl. ¶¶ 21−22 (stating Class Counsel expended over 228.90 hours in prosecuting this action with a total lodestar of $190,843.80—a negative multiplier of 0.71 when applying Class Counsel's usual and customary rates)[3]; *see also In re Flag Telecom Holdings, Ltd. Sec. Litig*., 2010 WL 4537550, at *26 (S.D.N.Y. Nov. 8, 2010) ("Lead Counsel's request for a percentage fee representing a significant discount from their lodestar provides additional support for the reasonableness of the fee request."). Here, Emery Reddy, PC has expended 115.5 hours for a total lodestar of $91,900.20 and $2,980.00 in expenses. Stranch, Jennings & Garvey, PLLC has expended 36.0 hours for a total lodestar of $34631.50 and $1,033.49 in expenses. Milberg PLLC has expended 31.9 hours for a total lodestar of $22,817.10 and $569.75 in expenses. Kopelowitz Ostrow P.A. has expended 45.5hours for a total lodestar of $41,495.00 and $578.84 in expenses. *See* Haroutunian Decl. ¶ 21, Exhibit A (Lodestar Tables). Class Counsel's request for a fee award at 27.27% of

[3] Class Counsel had the assistance of additional attorneys and staff at our firms who billed a total of 38.6 hours which Class Counsel are not including in their calculation having removed their time as duplicative.

the Settlement represents a 0.71 negative multiplier on its documented lodestar, with substantial work remaining in this matter (assuming the Court approves the Settlement) including, but not limited to, supervising and coordinating with the Settlement Administrator on the Notice Program, effectuating the Notice Program, responding to Class Member questions regarding the Settlement, drafting and arguing this motion, and overseeing the distribution of settlement proceeds.

Moreover, in assessing fee applications, the reasonable hourly rates are calculated according to the prevailing market rates in the relevant legal community. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013). Here, the hourly rates for Class Counsel are reasonable for the community and comparable to similar services by lawyers of reasonably comparable skill, experience, and reputation. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2017 WL 2214655, at *5 (N.D. Cal. March 17, 2017) (approving "billing rates ranging from $310 to $1,650 for partners, $185 to $850 for associates, and $125 to $450 for paralegals"); *Nitsch v. DreamWorks Animation SKG, Inc.*, No. 14-cv-04062-LHK, 2017 WL 2423161, at *9 (N.D. Cal. June 5, 2017) (approving partner rates up to $1,200 as fair and reasonable for the relevant community); *In re Equifax Customer Data Sec. Breach Litig.*, MDL No. 2800; No. 1:17-md-2800-TWT, 2020 WL 256132, *259 (finding as reasonable attorneys' rates ranging up to $1,050 per hour more than three years ago).

Indeed, the *2022 Real Rate Report: The Industry's Leading Analysis of Law Firm Rates, Trends, and Practices* ("Real Rate Report") has often been consulted by courts as a useful guidepost to determine the reasonableness of hourly rates, including in the Central District of California in a very similar data breach case. *See, e.g., Hashemi et al. v. Bosley*, 2022 WL 18278431, at *10 (C.D. Cal. Nov. 21, 2022). The Real Rate Report identifies attorney rates by location, experience, firm size, areas of expertise, and industry, as well as specific practice areas, and is based on actual legal billing, matter information, and paid and processed invoices. *See Hicks v. Toys 'R' Us-Del., Inc.*, No. 2:13-cv-01302 DSF (JCGx), 2014 WL 4670896, at *1 (C.D. Cal. Sept. 2, 2014). The Real Rate Report has been found to be "a much better reflection of true market rates than self-reported rates in all practice areas." *Id.*; *see also Tallman v. CPS Sec. (USA), Inc.*, 23 F. Supp. 3d 1249, 1258 (D. Nev. 2014) (considering the Real Rate Report); *G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 433 (S.D.N.Y. 2012) (same).

The Real Rate Report provides that, in Los Angeles in 2022, partners engaged in litigation had hourly rates ranging from $516–$1,045 and associates had hourly rates ranging from $400–$855. *See* Real Rate Report at 16. These numbers represent the "middle 50 percent" of the rates charged, meaning that 25% of attorneys in Los Angeles charged hourly rates in excess of the upper limit of these

ranges.[4] Based on these numbers, and numbers approved by courts, the range of $200.00–$395.00 for paralegals, $400.00–$787.50 for associates, and $839.00–$1525.00 for partners requested here is reasonable. Haroutunian Decl., Ex. A (providing rates and years of experience Class Counsel).

The hours spent are also reasonable. In considering the reasonableness of hours, "[b]y and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). To date, Class Counsel have expended 228.9 hours litigating this matter to the benefit of the Class. *See* Haroutunian Decl., ¶ 21. This time included investigating and bringing this case upon the announcement of the Data Breach; drafting three separate original complaints including in case numbers 8:24-cv-02802; and 8:24-cv-2802, both of which were then voluntarily dismissed and the Plaintiffs and claims therein were integrated into the First Amended Class Action Complaint in the instant matter in an attempt to avoid duplicative litigation and overburdening the judicial system; participating in mediation and substantial post-mediation negotiations to reach a

[4] Since January 2022, the United States has experienced a total of 16% inflation, meaning these numbers, in 2026 dollars, represent rates of $598.56-$1,212.20 for partners and $464–$991.80 for associates. *See* CPI Inflation Calculator www.bls.gov/data/inflation_calculator.htm.

final agreement in principle; negotiating a complex Settlement Agreement together with its exhibits; soliciting bids for and investigating potential notice and settlement administrators and their respective plans; moving for preliminary approval; supervising the notice program, and drafting this Motion. *See id.* ¶ 23.

Given the foregoing, Class Counsel's fee request of $135,000.00 is reasonable.

**d. The Appropriateness of the Requested Service Awards**

Plaintiffs request that this Court approve Service Awards for the two Class Representations in the amount of $2,500.00 each. Service awards are typical in class actions, and "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009).

Plaintiffs have been active participants in this matter since its inception, expending considerable effort on behalf of the Settlement Class by, among other things: (1) meeting with their counsel at the outset of the case; (2) assisting with investigation of the facts; (3) reviewing the complaint prior to filing; and (4) consulting with their counsel during the litigation and settlement negotiations.

## V. CONCLUSION

For all of the foregoing reasons, together with those given in Plaintiffs' previous filings, Plaintiffs' Motion should be granted and the Settlement approved.

DATE: July 9, 2026

Respectfully submitted,

By: /s/ Gregory Haroutunian
Gregory Haroutunian (SBN 330263)
M. Anderson Berry (SBN 262879)
**EMERY REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Tel: (916) 995-5968
gregory@emeryreddy.com
anderson@emeryreddy.com

J. Gerard Stranch, IV (*pro hac vice*)
Grayson Wells (*pro hac vice*) **STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel: (615) 254-8801
gstranch@stranchlaw.com
gwells@stranchlaw.com

John J. Nelson (SBN 317598)
**MILBERG, PLLC**
280 S. Beverly Drive
Beverly Hills, CA 90212
Tel: (858) 209-6941
jnelson@milberg.com

Kristen Lake Cardoso (SBN 338762)
**KOPELOWITZ OSTROW P.A.**
One W. Las Olas Blvd., Ste. 500
Fort Lauderdale, Florida 33301
Tel: (954) 990-2218
cardoso@kolawyers.com

*Attorneys for Plaintiffs and the Settlement Class*

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.2**

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,913 words, which complies with the word limit of L.R. 11-6.1.

By: */s/Gregory Haroutunian*
Gregory Haroutunian

**CERTIFICATE OF SERVICE**

I hereby certify that on July 9, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

By: */s/ Gregory Haroutunian*
Gregory Haroutunian